Cite as 2024 Ark. App. 403

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-23-3

| | | |
|---|---|---|
| GU YUE | | **Opinion Delivered** September 4, 2024 |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72DR-18-1573] |
| V. | | |
| DAVID LONON | | HONORABLE CRISTI BEAUMONT, JUDGE |
| | APPELLEE | AFFIRMED |

**RITA W. GRUBER, Judge**

Gu Yue appeals the Washington County Circuit Court's September 15, 2022 order that denied her motion to modify her child-support payments to David Lonon and found her in contempt for failure to fully pay child support.[1] She contends that the circuit court erred (1) in failing to modify her child-support obligation pursuant to Arkansas Supreme Court Administrative Order No. 10 and (2) in failing to modify her child-support obligation retroactively to August 21, 2020—the date she filed her motion to modify.

The parties were married on October 29, 2012, and the only child of the marriage was born in 2016. On January 24, 2020, the circuit court entered an order granting Lonon

---

[1]The order allowed Yue to purge herself of contempt by paying child-support arrearages within ninety days; the record before us contains no appeal of the contempt order. Lonon does not dispute that Yue was current in her child-support obligation until February 2022.

an absolute divorce.[2] The divorce decree reflects that Yue and Lonon appeared at a January 10, 2020 hearing by and through their separate attorneys and represented that they had come to terms regarding property division, child custody, and all other matters at issue. In accord with the parties' agreement, the court awarded primary physical custody to Lonon with visitation to Yue under the court's standard visitation schedule. Yue was ordered to pay monthly child support beginning on January 10, 2020, "in the amount of $1,600 based upon her income" and to provide Lonon with proof of her income for the previous calendar year. The record contains no appeal of the January 2020 order.

On April 2, 2020, the Arkansas Supreme Court revised our state's method of calculating child support and announced, "Effective immediately, the new guidelines may be used as an alternative to the previous version of Administrative Order No. 10. The new guidelines shall be used for all support orders entered after June 30, 2020." *In re Implementation of the Revised Admin. Order No. 10*, 2020 Ark. 131 (per curiam). Attached to the per curiam was a revised monthly Family Support Chart that was based on an "Income Shares Model" and superseded any prior payor-income-based family support chart. *Id.* at 2.

Section II.1 of Administrative Order No. 10, citing Arkansas Code Annotated section 9-14-107(c)(2),[3] discusses "when" existing child-support orders are affected by the Order's

---

[2]The circuit found that Lonon met his burden of proving grounds for divorce in accord with Arkansas Code Annotated section 9-12-301(b)(4) (Repl. 2020): "When either party shall have committed adultery subsequent to the marriage[.]"

[3]Arkansas Code Annotated section 9-14-107(c)(2)(C) (Supp. 2023) states:

incorporation of the Income Shares Model. *Id.* at 4. Except in cases where the payor's gross income is less than $900, "the gross income of both parents shall first be determined and combined. Each parent's share of the combined total gross income is then determined based on their percentage of the combined income." *Id.* at 15.

Yue filed a motion to modify child support on August 21, 2020—seven months after the divorce decree was entered. She contended that there had been a material change of circumstances and requested that her child-support obligation be modified under the newly revised Administrative Order No. 10 in an amount "commensurate with her earnings." Her motion stated, "[Yue] has suffered a substantial reduction in her income and is now working at Panda Express for $13.00 an hour and has exhausted her savings from which she was paying the ordered amount of child support."

Lonon answered Yue's motion for modification on September 10, 2020, specifically denying her allegation of reduced income and noting that she was working at Panda Express when the court entered its previous order of child support. He pleaded the affirmative defenses of unclean hands and estoppel, alleging that Yue's child support had been set at the current amount because she receives money from her parents to supplement her lifestyle.

---

An inconsistency between the existing child support award and the amount of child support that results from application of the family support chart shall constitute a material change of circumstances sufficient to petition the court for modification of child support according to the family support chart after appropriate deductions unless . . . [t]he inconsistency is due solely to a revision of the family support chart.

On November 4, 2021, Lonon filed a motion to increase Yue's support obligation under the new child-support guidelines. He alleged there had been a material change of circumstances in that Yue had a history of not disclosing all income to him, his expenses had increased for health insurance and work-related childcare, and Yue's expenses had decreased due to her recent remarriage. Yue responded to Lonon's motion to increase her child-support obligation on December 9, 2021, denying his allegations.

On April 15, 2022, Lonon moved for contempt. He alleged that Yue had accumulated arrearages of $1500 in child support, having paid only $1100 of the $1600 court-ordered amount for the previous three months. Yue responded that a motion for modification was currently pending before the court and that her actions were not willful.

On August 16, 2022, Yue filed a brief with exhibits attached in support of her motion for modification of child support. She asserted that her child-support obligation should be reduced and that she should be credited for past overpayment. She stated in her brief that the divorce decree contained no finding of her income to justify ordering her to pay $1600 monthly child support; that subsequent to the date of divorce, Administrative Order No. 10 modified the method of calculating child support; and that her motion for modification was filed because of income reduction and the "new law." She stated that her current income consisted of two sources: a $13 hourly wages at Panda Express—where she had worked since 2020 but had been on four months' maternity leave in 2022; and monthly rental income of $1100 from a house owned by her parents, for which she was responsible for paying the $1329.60 property taxes.

Yue also asserted in her brief that her monthly income from all sources is $1400 and below minimum wage, that Lonon's monthly income "has been agreed to" as $5000, and that he provides the child's health insurance at $139 a month. From her calculations on Administrative Order No. 10's April 2022 worksheets, she concluded that her monthly child-support obligation should be $216.29 beginning on August 21, 2022. Referencing her payment record from the Office of Child Support Enforcement, she asserted that she had overpaid her obligation by $28,802.54. She proposed that she cease paying child support until satisfaction of the overpayment.

Lonon filed a responsive brief on August 29, 2022, stating that the circuit court entered the divorce decree and custody order after entering an emergency order due to Yue's absconding to China with the child. Lonon asserted that Yue claimed during the pendency of the divorce case that her only income was from Panda Express and rental income, identical to her claim in her motion to modify child support—despite having a master's degree in economics and working extensively during their marriage as a Chinese business and investment broker. He stated that the parties agreed on the record that Yue would pay $1600 monthly child support and would forgo any equity or interest in two homes the couple owned. He asserted that this agreement was due to Yue's dishonesty in discovery, failure to disclose other sources of money at the time of the divorce, and absconding with the child. He stated that his discovery revealed Yue was receiving thousands of dollars in gifts from her parents, who were wealthy miners in China; Yue had multiple bank accounts in both China and the United States; and she was transferring money between accounts. He stated that

5

"she had multiple accounts under different aliases, much like now; and [he] was able to ascertain that the accounts were in fact [hers], from the deposits/transfers to her disclosed accounts, as well as noticing the address for each account was that of her address at that time." Lonon noted that he obtained the undisclosed statements through a subpoena, both at the time of divorce and when Yue filed her motion to decrease her child-support obligation.

Lonon stated in his circuit court brief that he filed his motion to increase the amount of child support after discovering through Yue's various bank accounts that her current situation was substantially better than during the pendency of their divorce. He requested an increase in the event that the circuit court should find a material change of circumstance. Exhibits that Lonon attached to his brief included bank statements discovered while the divorce case was pending, Yue's answers to interrogatories and request for production of documents in the current case, Arvest Bank statements in response to Lonon's subpoena, and Yue's statements of financial means dated January 8, 2020, and May 16, 2021. He asserted that Yue agreed to an imputed net annual income of $115,991 at the time of divorce, indicating she is capable of earning this amount.

Lonon concluded in his circuit court brief that Yue failed to prove a material change of circumstances after the divorce that would warrant decreasing her child support. He disputed her claim that her total gross income from all sources is $1417.93, alleging that she failed to include monetary gifts and/or gifts and transfers from outside sources. He asserted that her bank records during the January 2020 divorce proceedings showed that she was

6

given at least $31,274 in bank deposits in the span of a year, not including $80,000 wired to her account in November 2019; that her current tax returns include neither her spouse's reported income, which resulted in a household total of $270,188, nor her parents' gifts to Yue and her husband totaling $115,999 for tax year 2020. Lonon stated that he was unable to ascertain all Yue's sources of monies because he lacked access to her account with her husband but that she clearly continued to receive family monetary gifts just as she had when the divorce decree was entered. Finally, Lonon asserted that Yue's bank records contradicted her claim of depleted savings. He requested that the circuit court dismiss her motion for modification of child support.

Yue filed a rebuttal brief disputing various allegations by Lonon, explaining transactions in her bank accounts, and attributing some deposits to repayments of her loans to a friend and to a coworker. She stated that monetary gifts from her mother had been disclosed to the circuit court at the time of divorce, that Yue made a $10,000 down payment on a car several months later, and that she did not disclose a college savings account on the advice of counsel. Yue stated that she and her husband filed a joint income-tax return and "qualified to receive a joint refund of $5177," which was deposited into a bank account that was her husband's separate property. Exhibits attached to her brief included records prior to her divorce from Lonon, along with an affidavit by her new husband. He stated in the affidavit that the couple's joint tax-return refunds were deposited into a bank account he

7

alone owned and had owned since before he met her, that she earned $14,354 in 2021 and was not a gambler, and that $5000 in winnings shown on their tax return were his.[4]

In a September 15, 2022 order, the circuit court denied both motions for modification of child support, reasoning as follows:

> In order to qualify for a modification of child support, [Yue] must present evidence that a change of circumstances has occurred. The burden of proof is on the movant. [Yue] has failed to provide any proof that her financial situation has changed at all since the divorce in 2020. From the briefs and evidence submitted to the Court,[5] [Yue] was working at Panda Express at the time of the divorce, where she is still employed. No one disputes that she has a master's degree and is underemployed. Likewise, [Lonon] has failed to provide sufficient evidence to prove that there has been a material change to increase [Yue]'s child support.

Yue timely filed a notice of appeal from the circuit court's decision. Lonon timely filed a notice of cross-appeal, to take effect only "should the Court of Appeals find that the trial court erred in its finding there was not a change of circumstances sufficient to warrant modification of [Yue's] child-support obligation as reflected by its September 15, 2022 order [.]" He abandoned any pending or unresolved claims.

Yue argues on appeal that the circuit court erred in failing to modify her child-support obligation. She contends that the court's order is defective on its face by failing to determine either party's income or to state the projected amount of support under the child-support

---

[4]The 2020 tax return shows a gambling income of $5595.

[5]The case was submitted to the circuit court on the pleadings, trial briefs, and attachments without a hearing.

chart. She additionally complains that the court failed to order that the amount of child support she requested be retroactive to the date she filed her motion to modify.

When the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Guin v. McWhorter*, 2017 Ark. App. 463, at 3, 528 S.W.3d 326, 328. Our standard of review from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Id.* We defer to the circuit court's findings regarding weight of the evidence and credibility of the parties, *Boyd v. Crocker*, 2017 Ark. App. 108, at 2, 513 S.W.3d 302, 304, but no deference is given to the circuit court's conclusions of law. *Maner v. Maner*, 2021 Ark. App. 472, at 4, 639 S.W.3d 368, 371.

In making a factual determination of whether there have been changed circumstances sufficient to warrant a modification of child support, the circuit court must consider evidence. *Dottley v. Miller*, 101 Ark. App. 323, 327, 276 S.W.3d 729, 732 (2008). The appellate court reviewing the circuit court's determination then must review the entire evidence. *Id.* A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Potts v. Potts*, 2017 Ark. 33, at 9, 512 S.W.3d 611, 616.

In the present appeal, the parties' arguments repeat the positions they stated in their briefs to the circuit court. Yue additionally notes that only she presented the circuit court with a calculation of child support under Administrative Order No. 10. She complains that Lonon's evidence largely consists of documents dated before the decree of divorce and asserts

9

that both the divorce decree and the order denying child-support modification blatantly fail to comply with Administrative Order No. 10. She notes that the divorce decree failed to recite her income or the amount of support required by the guidelines, failed to state whether the court deviated from the family support chart, and failed to recite its reasons. She also notes that the order from which she appeals (the denial of her motion for modification) makes no finding of either party's income, nor does it explain "where [her] support obligation of $1600 monthly for one child came from."

Lonon acknowledges revised Administrative Order No. 10's requirement that "orders granting or modifying child support" include the circuit court's determination and recitation of both parties' gross income:

> *All orders granting or modifying child support* shall contain the court's determination of the payor's income, payee's income, recite the amount of support required under these Guidelines, and state whether the court deviated from the presumptive child-support calculation set by the Worksheet and these Guidelines. If an order deviates from the Guidelines amount, then the order must explain the reason(s) for the deviation.

*In re Implementation of the Revised Admin. Order No. 10*, 2020 Ark. 131, at 4–5 (emphasis added). He argues, however, that the requirement does not apply to the order at issue here because it neither awarded nor denied child support. He contends that the moving party bears the burden of proof even if the underlying child-support order and the order denying modification appear to be deficient. Furthermore, he asserts that any deficiencies in the circuit court's order resulted from Yue's failure to meet her burden of proof. His points are well taken.

10

In *Newton v. Newton*, 2018 Ark. App. 525, at 9, 565 S.W.3d 493, 499, we reversed and remanded the circuit court's order denying appellant's 2017 motion to modify the child support that was ordered in the parties' 2016 divorce decree. Appellant testified at the modification hearing that he did not disagree with the original amount of child support he was ordered to pay, and he and appellee testified that they were unsure how the circuit court arrived at the figure. Appellant proffered evidence of his 2015 income at the divorce proceedings, but the circuit court ruled that it was irrelevant and disallowed its admission into evidence. *Id.* at 5. We noted that appellant could meet his burden of proof only by showing both "the current income conditions of the parties . . . [and] what 2015 income the circuit court used in 2016 to calculate child support." *Id.* at 7. We held that the circuit court abused its discretion in excluding the relevant evidence of appellant's 2015 income. *Id.* at 8.

In both *Newton* and the present case, the circuit court's orders denying modification of a child-support obligation failed to recite the amount of support required by the guidelines and failed to state whether the ordered amount deviated from the support chart and, if so, to list its reasons for doing so. But in the present case, the circuit court did not deny admissibility of any evidence proffered to it. The circuit court decided the case on briefs and evidence presented by the parties and ruled that Yue failed to provide any proof that her financial situation changed after the January 2020 divorce. The order denying modification noted that Yue was working at Panda Express at the time of divorce and was still employed there.

11

Yue's child-support obligation was set by the circuit court at $1600 and was "based upon her income" at the time of the divorce. She does not argue on appeal that the circuit court excluded any proffer of evidence on this issue. Her circuit court brief presented no proof of what income the circuit court used in calculating the original amount of child support. Her exhibits included W-2 wages on her income tax returns from 2019–2021, but her proof of current earnings at Panda Buffet was solely a July 31, 2022 paystub in the amount of $285.82.

The following subdivisions of Arkansas Code Annotated section 9-12-312(a)(3) are relevant to the present case:

> (A) In determining a reasonable amount of child support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart.
>
> . . . .
>
> (C) It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded.
>
> (D) Only upon a written finding or specific finding on the record that the application of the child support chart would be unjust or inappropriate, as determined under established criteria set forth in the family support chart, shall the presumption be rebutted.

Ark. Code Ann. § 9-12-312(a)(3)(A), (C), (D) (Repl. 2020).

The factors a circuit court should consider in determining whether there has been a change in circumstances warranting an adjustment in child support include remarriage of the parties, a minor reaching majority, change in the income and financial conditions of the

12

parties, debts of the parties, financial conditions of the parties and families, and the child-support chart. *Higdon v. Roberts*, 2020 Ark. App. 59, at 5–6, 595 S.W.3d 19, 23. In *Higdon*, the circuit court did not err in modifying appellee's child-support obligation because the inconsistency between the chart amount of appellant's child support and the agreed order where she paid nothing constituted a material change in circumstances. *Id.* at 8; *see also Woodson v. Johnson*, 63 Ark. App. 192, 196, 975 S.W.2d 880, 882 (1998) ("Because Woodson's income was not determined when support was set . . . and cannot be determined now, we cannot say that there has been a material change in circumstances justifying a decrease in Woodson's child support.").

We agree with Lonon that when the circuit court denies a motion to modify child support, revised Administrative Order No. 10 does not require the circuit court to determine the parties' income, recite the amount of support required under the guidelines, and address any deviation from the guideline's presumptive child-support calculation. The issue here is simply whether Yue met her burden of proving a material change of circumstances sufficient to modify a previous child-support obligation.

Having conducted a review of the entire evidence, we hold that the circuit court did not clearly err in finding that Yue failed to provide proof that her financial situation had changed since the time of the divorce sufficient to warrant modification of her child-support obligation. She presented no proof of what income the circuit court used to calculate the base child support at the time of the January 2020 divorce and no evidence of her income after December 31, 2021, except the single paycheck stub of her wages from Panda Express

dated July 31, 2022. We therefore affirm the denial of the order denying her motion to decrease her child support obligation.

Because we affirm the circuit's order denying Yue's motion to modify her child-support obligation, we need not address her second point—that the circuit court erred in failing to modify her child-support obligation retroactively to the date she filed her motion. Additionally, because we hold that the circuit court did not err, we do not address Lonon's cross-appeal.

Affirmed.

GLADWIN and KLAPPENBACH, JJ., agree.

*Rhoads & Armstrong, PLLC*, by: *Johnnie Emberton Rhoads*, for appellant.

*Brady & Platt, PLC*, by: *Kathryn E. Platt*, for appellee.